*307 OPINION OF THE COURT
Alexander, J.
In this medical malpractice action, defendant, Dr. Irwin L. Harris, appeals from an order of the Appellate Division unanimously affirming an amended judgment of Supreme Court, entered on a jury verdict, finding him jointly and severally liable with Dr. Sol Rogatnick for injuries negligently inflicted upon plaintiff, Josephine Ravo, and resulting in brain damage that has rendered her severely and permanently retarded. The issue presented is whether joint and several liability was properly imposed upon defendant under the circumstances of this case where, notwithstanding that the defendants neither acted in concert nor concurrently, a single indivisible injury— brain damage — was negligently inflicted. For the reasons that follow, we affirm.
I.
Uncontroverted expert medical evidence established that plaintiff, Josephine Ravo, who at the time of trial was 14 years of age, was severely and permanently retarded as a *308 result of brain damage she suffered at birth. The evidence demonstrated that the child was born an unusually large baby whose mother suffered from gestational diabetes which contributed to difficulties during delivery. The evidence further established that Dr. Rogatnick, the obstetrician who had charge of the ante partum care of Josephine’s mother and who delivered Josephine, failed to ascertain pertinent medical information about the mother, incorrectly estimated the size of the infant, and employed improper surgical procedures during the delivery. It was shown that Dr. Harris, the pediatrician under whose care Josephine came following birth, misdiagnosed and improperly treated the infant’s condition after birth. Based upon this evidence, the jury concluded that Dr. Rogatnick committed eight separate acts of medical malpractice, and Dr. Harris committed three separate acts of medical malpractice.
Although Dr. Rogatnick’s negligence contributed to Josephine’s brain damage, the medical testimony demonstrated that Dr. Harris’ negligence was also a substantial contributing cause of the injury. No testimony was adduced, however, from which the jury could delineate which aspects of the injury were caused by the respective negligence of the individual doctors. Indeed, plaintiff’s expert, Dr. Charash, testified that while the hypoxia and trauma directly attributable to Dr. Rogatick’s negligence were two major villains — being the most common causes of perinatal difficulty — the hyperbilirubinemia and excessively high hematocrit level inadequately addressed by Dr. Harris could not be excluded as having a contributing effect. The expert concluded that neither he nor anybody else could say with certainty which of the factors caused the brain damage. Similarly, Dr. Perrotta, testifying on behalf of plaintiff, opined that she could not tell whether the excessively high hematocrit level contributed ”10 percent, 20 percent, or anything like that” to the injury. Nor, as the Appellate Division found, did Dr. Harris adduce any evidence that could support a jury finding that he caused an identifiable percentage of the infant plaintiff’s brain damage. Indeed, Dr. Harris’ entire defense appears to have been that he was not responsible for the plaintiff’s injury to any degree.
The trial court instructed the jury that if they found that both defendants were negligent, and that their separate and independent acts of negligence were direct causes of a single injury to the plaintiff, but that it was not possible to determine what proportion each contributed to the injury, they *309 could find each responsible for the entire injury even though the act of one may not have caused the entire injury, and even though the acts of negligence were not equal in degree. The court further instructed the jury that if they found that both defendants were negligent, they would have "to compare their negligence on the basis of 100 percent”. The court also instructed the jury that if they found both defendants responsible for the plaintiff’s injury "then you will evaluate their respective faults in contributing to the infant’s condition”.
These instructions were explanatory of an interrogatory, previously accepted without objection by Dr. Harris, and submitted to the jury, that requested the standard Dole v Dow apportionment of fault (Dole v Dow Chem. Co., 30 NY2d 143). Notwithstanding his failure to object to this interrogatory, Dr. Harris raised for the first time, after the jury was charged, an objection to the instructions, contending that he was only "liable for what injury he puts [sic] on top of the injury that exists”, and therefore responsible only as a successive and independent tort-feasor. The trial court rejected defendant’s contention, and the jury returned a verdict for plaintiff in the total amount of $2,750,000 attributing 80% of the "fault” to Dr. Rogatnick and 20% of the "fault” to Dr. Harris.
In a postverdict motion, Dr. Harris sought an order directing entry of judgment limiting the plaintiff’s recovery against him to $450,000 (20% of the $2,250,000 base recovery — the court having setoff $500,000 received by plaintiff in settlement of claims against other defendants) based upon his contention that his liability was not joint and several, but rather was independent and successive. This motion was denied. The Appellate Division dismissed Harris’ appeal from the order denying the postverdict motion and affirmed the amended judgment entered on the jury’s verdict.
II.
When two or more tort-feasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable (see, Suria v Shiffman, 67 NY2d 87; Bichler v Lilly & Co., 55 NY2d 571; Derby v Prewitt, 12 NY2d 100, 105; Sweet v Perkins, 196 NY 482, 485). This is so because such concerted wrongdoers are considered "joint tort-feasors” and in legal contemplation, there is a joint enterprise and a mutual agency, such that the act of one is the act of all and liability for all that is done is visited upon each (Bichler v *310 Lilly & Co., 55 NY2d 571, 580-581, supra; see generally, Prosser and Keeton, Torts § 46 [5th ed]). On the other hand, where multiple tort-feasors "neither act in concert nor contribute concurrently to the same wrong, they are not joint tort-feasors; rather, their wrongs are independent and successive” (Suria v Shiffman, 67 NY2d 87, 98, supra; see, Melodee Lane Lingerie Co. v American Dist. Tel. Co., 18 NY2d 57, 66; Derby v Prewitt, 12 NY2d 100, 105, supra; Matter of Parchefsky v Kroll Bros., 267 NY 410, 413). Under successive and independent liability, of course, the initial tort-feasor may well be liable to the plaintiff for the entire damage proximately resulting from his own wrongful acts (Milks v McIver, 264 NY 267, 270), including aggravation of injuries by a successive tort-feasor (Milks v McIver, 264 NY 267, 270, supra; Matter of Parchefsky v Kroll Bros., 267 NY 410, 414, supra; Derby v Prewitt, 12 NY2d 100, 105, supra). The successive tort-feasor, however, is liable only for the separate injury or the aggravation his conduct has caused (see, Suria v Shiffman, 67 NY2d 87, 98, supra; Derby v Prewitt, 12 NY2d 100, 106, supra; Dubicki v Maresco, 64 AD2d 645, 646; see also, Zillman v Meadowbrook Hosp. Co., 45 AD2d 267).
It is sometimes the case that tort-feasors who neither act in concert nor concurrently may nevertheless be considered jointly and severally liable. This may occur in the instance of certain injuries which, because of their nature, are incapable of any reasonable or practicable division or allocation among multiple tort-feasors (see, e.g., Hawkes v Goll, 281 NY 808, affg 256 App Div 940; Slater v Mersereau, 64 NY 138; Wiseman v 374 Realty Corp., 54 AD2d 119; see also, Prosser and Keeton, Torts § 52, at 347 [5th ed]).
We had occasion to consider such a circumstance in Slater v Mersereau (64 NY 138, supra), where premises belonging to the plaintiff were damaged by rainwater as a result of the negligent workmanship by a general contractor and a subcontractor. We held that where two parties by their separate and independent acts of negligence, cause a single, inseparable injury, each party is responsible for the entire injury: "Although they acted independently of each other, they did act at the same time in causing the damages * * * each contributing towards it, and although the act of each, alone and of itself, might not have caused the entire injury, under the circumstances presented, there is no good reason why each should not be liable for the damages caused by the different acts of all * * * The water with which each of the parties were *311 instrumental in injuring the plaintiffs was one mass and inseparable, and no distinction can be made between the different sources from whence it flowed, so that it can be claimed that each caused a separate and distinct injury for which each one is separately responsible * * * [t]he contractor and subcontractors were separately negligent, and although such negligence was not concurrent, yet the negligence of both these parties contributed to produce the damages caused at one and the same time” (Slater v Mersereau, 64 NY 138, 146-147, supra).
Our affirmance in Hawkes v Goll (281 NY 808, affg 256 App Div 940, supra) demonstrates that simultaneous conduct is not necessary to a finding of joint and several liability when there is an indivisible injury. In that case, the decedent was struck by the vehicle driven by the defendant Farrell and was thrown across the roadway, where very shortly thereafter he was again struck, this time by the vehicle driven by the defendant Goll, and dragged some 40 to 50 feet along the highway. He was taken to the hospital where he expired within the hour. The Appellate Division stated (256 App Div 940): "As the result of his injuries the plaintiff’s intestate died within an hour. There could be no evidence upon which the jury could base a finding of the nature of the injuries inflicted by the first car as distinguished from those inflicted by the second car. The case was submitted to the jury upon the theory that if both defendants were negligent they were jointly and severally liable. While the wrongful acts of the two defendants were not precisely concurrent in point of time, the defendants may nevertheless be joint tort feasors where, as here, their several acts of neglect concurred in producing the injury.”
A similar result was reached in Wiseman v 374 Realty Corp. (54 AD2d 119, supra). There, the decedent had sustained injuries in a fall caused by the defective stairway and handrail in the defendant 374 Realty Corp.’s building which resulted in his hospitalization. While hospitalized, he was treated, until his death, with a drug "Decadron”, allegedly known to cause stomach bleeding as a side effect, and requiring an adequate amount of antacid therapy on a daily basis to prevent and protect against such occurrence. In reinstating Dole v Dow cross claims by the manufacturer of the "Decadron” and the hospital against 374 Realty Corp., the court observed that notwithstanding that the acts of negligence occurred at separate times, the injuries sustained by the *312 decedent resulted in his death, and that no distinction could be made between the injuries sustained through the negligence of the building owner and those resulting from the improper conduct of the manufacturer and the hospital (Wise-man v 374 Realty Corp., 54 AD2d 119, 122, supra).
Similarly, here the jury was unable to determine from the evidence adduced at trial the degree to which the defendants’ separate acts of negligence contributed to the brain damage sustained by Josephine at birth. Certainly, a subsequent tortfeasor is not to be held jointly and severally liable for the acts of the initial tort-feasor with whom he is not acting in concert in every case where it is difficult, because of the nature of the injury, to separate the harm done by each tort-feasor from the others (see, Chipman v Palmer, 77 NY 51; see generally, Prosser, Joint Torts and Several Liability, 25 Calif L Rev 413). Here, however, the evidence established that plaintiffs brain damage was a single indivisible injury, and defendant failed to submit any evidence upon which the jury could base an apportionment of damage.
Harris argues, however, that since the jury ascribed only 20% of the fault to him, this was in reality an apportionment of damage, demonstrating that the injury was divisible. This argument must fail. Clearly, the court’s instruction, and the interrogatory submitted in amplification thereof, called upon the jury to determine the respective responsibility in negligence of the defendants so as to establish a basis for an apportionment between them, by way of contribution, for the total damages awarded to plaintiff (see, CPLR 1401; Dole v Dow Chem. Co., 30 NY2d 143, supra). In that respect, the jury’s apportionment of fault is unrelated to the nature of defendants’ liability (i.e., whether it was joint and several or independent and successive).
As we said in Schauer v Joyce (54 NY2d 1, 5): "CPLR 1401, which codified this court’s decision in Dole v Dow Chem Co. (30 NY2d 143), provides that 'two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.’ The section 'applies not only to joint tortfeasors, but also to concurrent successive, independent, alternative, and even intentional tortfeasors’ (Siegel, New York Practice, § 172, p 213; see McLaughlin, Practice Com *313 mentarles, McKinney’s Cons Laws of NY, Book 7B, CPLR 1401, pp 362-363).” The focus and purpose of the Dole v Dow inquiry, therefore, is not whether, or to what degree, a defendant can be cast in damages to a plaintiff for a third party’s negligence, as was the case in Zillman v Meadowbrook Hosp. Co. (45 AD2d 267, supra). Rather, it seeks to determine "whether each defendant owed a duty to plaintiff and whether, by breaching their respective duties, they contributed to plaintiff’s ultimate injury” claimed to have been caused by each defendant (Helmrich v Lilly & Co., 89 AD2d 441, 444; see, Schauer v Joyce, 54 NY2d 1, 5, supra).
Here, the jury determined that the defendants breached duties owed to Josephine Ravo, and that these breaches contributed to her brain injury. The jury’s apportionment of fault, however, does not alter the joint and several liability of defendants for the single indivisible injury. Rather, that aspect of the jury’s determination of culpability merely defines the amount of contribution defendants may claim from each other, and does not impinge upon plaintiff’s right to collect the entire judgment award from either defendant (CPLR 1402). As we stated in Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co. (45 NY2d 551, 557): "The right under the Dole-Dow doctrine to seek equitable apportionment based on relative culpability is not one intended for the benefit of the injured claimant. It is a right affecting the distributive responsibilities of tort-feasors inter sese * * * It is elementary that injured claimants may still choose which joint tort-feasors to include as defendants in an action and, regardless of the concurrent negligence of others, recover the whole of their damages from any of the particular tort-feasors sued (see Kelly v Long Is. Light. Co., 31 NY2d 25, 30).” This being so, in light of the evidence establishing the indivisibility of the brain injury and the contributing negligence of Dr. Harris, and of the manner in which the case was tried and submitted to the jury, we conclude that joint and several liability was properly imposed.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.