OPINION OF THE COURT
Edward H. Lehner, J.
This is an application to set aside a jury verdict in favor of plaintiff in the total sum of $12,500,000.
FACTS
Plaintiff was waiting for a bus in a shelter located at the *700 southwest corner of 36th Street and Second Avenue when a van owned by defendant Hap Dong Express, Inc. (Hap Dong), and driven by defendant Farias, struck the shelter causing it to collapse on top of her. As a consequence, plaintiff, an unmarried 54-year-old elementary school principal, suffered severe injuries, including the amputation of her right arm above the elbow and injury to her legs and left arm.
The speed of the van at the time it struck a leg of the shelter was estimated as between 12 and 25 miles per hour. A police officer who arrived at the scene shortly after the occurrence testified that he saw a large piece of glass in plaintiff’s arm. After the incident plaintiff was taken to the hospital where efforts to save her arm failed.
The parties stipulated that the records of Bustop Shelters, Inc. (Bustop), the licensee of the shelters, showed that in the 13 months preceding the accident 14 shelters were demolished as a result of being struck by vehicles mounting the sidewalk, including the very shelter involved in this case which had been reconstructed only a few months prior to the incident herein. However, in none of these accidents was any person injured.
THE BOARD OF ESTIMATE RESOLUTION
Pursuant to a resolution adopted by the New York City Board of Estimate on May 8, 1975, Bustop was granted the right to "construct, maintain and operate” shelters at bus stops on city sidewalks. The design and location of the shelters required approval of various city agencies, but the shelters were to be constructed and maintained by Bustop at its own cost and expense. For the license granted to it, Bustop agreed to pay the city 5% of the gross receipts from advertising placed on the shelters.
PLAINTIFF’S CONTENTIONS
Plaintiff contended that the shelters were improperly designed in that, among other assertions, (i) the city had never tested them for lateral support and the legs were not constructed to sustain any type of significant impact; (ii) no barriers were placed in front of the shelters as protection from vehicles straying from the roadway; (iii) the configuration constituted a trap because no escape panel was provided; and (iv) the shelters should have been set back from the curb.
*701 THE JURY VERDICT
The jury found Hap Dong and Farias liable for the negligent operation and maintenance of the van. It further found that: (i) the design of the shelter was defective, which defect was a proximate cause of plaintiff’s injuries; (ii) the city did not exercise "due care in approving the design for the bus stop shelters”; (iii) it was not "reasonable for the City of New York to approve the erection of the bus stop shelters in the manner designed”; (iv) "subsequent to the approval of the design and prior to the accident” the city was "made aware of a dangerous condition resulting from the design of the shelter”; (v) the city failed to "take reasonable steps to alleviate the danger”; and (vi) plaintiff could not "have completely avoided any injury if the design of the shelter had been proper.”
The jury also found that the shelter did not contain any nontempered or improperly tempered glass as alleged by plaintiff. Accordingly, judgment was rendered in favor of defendant Parkline Shelters, Inc., which allegedly installed the glass in the subject shelter.
The total amount of damages found to have been sustained by plaintiff was $12,500,000, of which $10,000,000 was attributed to defective design. The city and Bustop were found equally responsible for this portion of the damages.
DESIGN DEFECT
A discussion of municipal liability for an alleged design defect must start with the seminal case of Weiss v Fote (7 NY2d 579 [I960]), which set forth the doctrine of qualified immunity of a municipality for such defects. There it was said that although "a municipality 'owed to the public the absolute duty of keeping its streets in reasonably safe condition’ ” (at 584), in "the area of highway safety, at least, it has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public” (at 588). The court observed, however, that a different result would ensue if "due care was not exercised in the preparation of the design or that no reasonable official could have adopted it” (at 586). It further *702 noted that government was under a continuing duty to review its traffic plan in the light of its actual operation.
In Friedman v State of New York (67 NY2d 271 [1986]), it was held that although government may have a qualified immunity for design defects, once it "is made aware of a dangerous traffic condition it must undertake reasonable study thereof with an eye toward alleviating the danger” (at 284), and that since government "has a nondelegable duty to maintain its roads in a reasonably safe condition”, once it "is made aware of a dangerous highway condition and does not take action to remedy it, the State can be held liable for resulting injuries” (at 286).
In a design defect case, the "question for the jury * * * is whether after weighing the evidence and balancing the product’s risks against its utility and cost, it can be concluded that the product as designed is not reasonably safe.” (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 109 [1983].)
Here, in addition to finding the design of the shelter to be defective, the jury found that the city did not exercise due care in approving it, and that subsequent to the approval it became aware of a dangerous condition and failed to take reasonable steps to alleviate the danger. If there are facts to support these conclusions, the requirements necessary to overcome a municipality’s qualified immunity are satisfied.
The court believes that sufficient facts were established to warrant these conclusions. A key factor in this case is that it was evident that no attention was paid to the fact that a structure with a heavy roof was being erected near the curb supported by legs that could sustain only a very minor impact, and could not support the structure if struck by a vehicle traveling at only a few miles per hour.
FORESEEABILITY
Here the stipulated fact was that these shelters, of which only a few hundred had been erected as of the time of the incident, had been demolished by vehicles over the prior 13 months at the rate of about one a month. Although fortunately no one was injured in any of those incidents, it would not take much foresight to recognize that sooner or later a shelter would be demolished at a time when a pedestrian would be standing within its confines who would be injured by the collapse. However, defendants contend that, as a matter of law, it is not foreseeable that a vehicle will leave the roadway *703 and thus there was no duty to erect a structure that would withstand the impact of a vehicle.
As Chief Judge Cardozo said in his classic opinion in Palsgraf v Long Is. R. R. Co. (248 NY 339, 344 [1928]), the "risk reasonably to be perceived defines the duty to be obeyed”. Hence, in determining whether the shelters were reasonably safe, it is necessary to consider the risks involved in erecting them as designed.
In Tomassi v Town of Union (46 NY2d 91 [1978]), plaintiff sued a municipality for injuries sustained when the vehicle in which he was a passenger struck a ditch alongside the roadway. In dismissing the claim against the municipality, Judge Cooke wrote (at 97):
"The liability of a municipality begins and ends with the fulfillment of its duty to construct and maintain its highways in a reasonably safe condition, taking into account such factors as the traffic conditions apprehended, the terrain encountered, fiscal practicality and a host of other criteria * * *
"Undoubtedly, certain risks are unavoidable. Especially in rural locales, such objects as utility poles, drainage ditches, culverts, trees and shrubbery are often in close proximity to the traveled right of way * * * But for the careful driver, the placement of these items near the pavement creates no unreasonable danger * * * This paved roadway, 22 feet in width, is more than adequate for safe public passage, and travel beyond those limits is neither contemplated nor foreseeable” (emphasis supplied).
In his conclusion, Judge Cooke stated (supra, at 98): "In sum, there is nothing in this record to warrant a conclusion that reasonable care required the town, at the pain of civil liability, to provide more safeguards to prevent motor vehicles leaving the roadway than it had done.”
The court believes that the statement therein that travel beyond the roadway was "neither contemplated nor foreseeable” is limited to the facts of that case involving a rural setting, without any evidence of prior accidents.
In the City of New York it would seem that a contrary conclusion is permissible. Although it is surely not "contemplated” that vehicles will mount our sidewalks, it certainly in this crowded locality is not irrational to find it foreseeable that such events will occur. Aside from what may be perceived from reading the public press of such accidents and what may *704 be observed from normal living in the city, the record here showed a significant number of shelters having been demolished by errant vehicles that left the roadway.
In Arena v Ostrin (134 AD2d 306 [2d Dept 1987]), plaintiffs were injured inside a store when a vehicle crashed through the storefront and struck them. Plaintiffs claimed the storeowner was negligent in failing to erect barriers so as to prevent vehicles using the adjacent parking lot from entering the store. In denying defendant’s motion for summary judgment, the court said (at 307): "The question of '[w]hat safety precautions may reasonably be required of a landowner is almost always a question of fact for the jury’ * * * Moreover, since questions concerning what is foreseeable may be the subject of varying inferences, these issues are generally for the fact finder to resolve * * * In these circumstances, where the store’s parking area was specifically designed so that automobiles were required to park close to and facing in toward the storefront, we cannot say, as a matter of law, that the accident was unforeseeable”.
"[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct.” (3 Harper, James and Gray, Torts § 18.2, at 657-659 [2d ed 1986].) "[F]oreseeability includes the probability of the occurrence of a general type of risk involving the loss, rather than the probability of the occurrence of the precise chain of events preceding the loss” (Tucci v Bossert, 53 AD2d 291, 293 [2d Dept 1976]).
Although when a "duty exists, nonliability in a particular case may be justified on the basis that an injury is not foreseeable” (Pulka v Edelman, 40 NY2d 781, 786 [1976]), here the jury was within its province in finding it reasonably foreseeable that a vehicle would leave the roadway on Second Avenue and cause a bus shelter to collapse and injure plaintiff.
PROXIMATE CAUSE
Obviously the injury to plaintiff would not have occurred had Farias not negligently driven his vehicle into the shelter. However, it may not be said that such act was a superseding cause to relieve the city and Bustop of liability as the jury could properly conclude that the foreseeable result of the risk *705 created by them was injury to a pedestrian from a vehicle striking the improperly designed shelter. (See, Derdiarian v Felix Contr. Corp., 51 NY2d 308, 316 [1980].)
CONCLUSION ON LIABILITY
Because it cannot be said that there is "no valid line of reasoning and permissible inferences which could possibly lead rational [jurors] to the conclusion reached by the jury on the basis of the evidence presented at trial” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]), defendants’ motions, to the extent they seek to overturn the jury findings of fact that result in a conclusion that Bustop and the city are liable to plaintiff, are denied.
DAMAGES
Since the jury found that plaintiff would not have completely avoided any injury if the design of the shelter had been proper, and since some proof was presented to show that an enhancement of injuries resulted from the defective design, it was rational for the jury to find the injuries resulting from the defective design were 80% of the total damages sustained by plaintiff. "Under successive and independent liability * * * the initial tort-feasor may well be liable to the plaintiff for the entire damage proximately resulting from his own wrongful acts * * * including aggravation of injuries by a successive tort-feasor * * * The successive tort-feasor, however, is liable only for the separate injury or the aggravation his conduct has caused”. (Ravo v Rogatnick, 70 NY2d 305, 310 [1987].)
Here the result of the jury verdict is that the city is liable for approving a defective design and Bustop is liable for placing defectively designed shelters on the streets, and both are responsible for not taking steps to alleviate the danger after they had notice of many demolitions. Hence, the damages for which such joint tort-feasors are liable is the same.
However, the amount of damages awarded is grossly excessive. Although the injury sustained by plaintiff was tragic, it nevertheless is true that she returned to work not long after the accident and sustained only $15,000 of lost earnings. In light of all of the evidence, the court finds that damages above $2,000,000 are excessive and orders a new trial as to the issue of damages only, unless plaintiff shall stipulate, within 30 days from service of a copy of this order, to reduce the amount of the verdict in her favor to said amount. If plaintiff so *706 stipulates, the amount of said sum for which the city and Bustop will be liable is 80% thereof, the percentage of liability fixed by the jury for the aggravation caused by the defective design.
INDEMNITY
Although there was no evidence of any written contract entered into between the city and Bustop, the latter is bound by the provisions of the resolution of the Board of Estimate adopted on May 8, 1975 under which it undertook to construct and maintain the shelters. Paragraph 14 thereof provides that Bustop "shall hold the City harmless from all damages to persons * * * by reason of the construction, operation or maintenance of the bus stop shelters hereby authorized, whether or not such damages are due to the negligence or otherwise of the City, its agents, servants or employees.” Pursuant to such language, the city is entitled to be indemnified, and for judgment over, for any sum paid by it under the judgment to be entered herein against it.
The finding of liability herein does not mean, as hypothesized by defendants, that the city might be liable to every pedestrian who is struck by a vehicle leaving the roadway, as there is nothing in this case that would suggest the city need protect all pedestrians from such errant vehicles. The conclusion here is limited to the situation where the city has permitted, what the jury has found to be a defectively désigned shelter, to be placed on the streets which can be easily demolished and injure a person standing thereunder. The court is not unmindful of the fact that this determination may well require the city and the current operators of the shelters to take some steps to improve protection to pedestrians using the hundreds of shelters on the city’s streets, or in default of which he placed in the posture of permitting unsafe structures to remain thereon with concomitant liability for future injuries from similar accidents.
Finally, the court wishes to commend all counsel for the professional manner in which this difficult case was tried, and for the excellent memoranda submitted to aid the court in the resolution of the issues.