FOURTH DEPARTMENT, DECEMBER, 2001

(December 21, 2001)

■ MICHAEL SAID, Individually and as Parent and Natural Guardian of MARK SAID, Respondent-Appellant, v GABRIEL A. ASSAAD et al., Appellants-Respondents, et al., Defendants. (Appeal No. 1.) [734 NYS2d 524] —Appeals and cross appeal unanimously dismissed without costs (*see*, CPLR 5501 [a] [1], [2]). (Appeals from Order of Supreme Court, Onondaga County, Major, J.—New Trial.) Present—Pigott, Jr., P. J., Hayes, Wisner, Kehoe and Burns, JJ.

■ MICHAEL SAID, Individually and as Parent and Natural Guardian of MARK SAID, Respondent-Appellant, v GABRIEL A. ASSAAD et al., Appellants-Respondents, and WESTERN PRODUCTS, INC., a Division of DOUGLAS DYNAMICS, INC., et al., Respondents-Appellants, et al., Defendants. (Appeal No. 3.) [735 NYS2d 265] —Order and judgment reversed on the law without costs, order dated March 4, 1997 vacated, motion by defendants Gabriel A. Assaad and Momdouh A. Assaad granted and new trial granted in accordance with the following Memorandum: Plaintiff, individually and on behalf of his infant son, commenced this action seeking damages for serious injuries sustained by his son when the vehicle in which his son was riding collided with a pickup truck equipped with a snowplow attachment. Plaintiff sued Gabriel A. Assaad and Momdouh A. Assaad (Assaad defendants), the driver and owner of the vehicle in which plaintiff's son was a passenger; Genesee Valley

Club and William Gorley, the owner and driver of the pickup truck; and Western Products, Inc., a Division of Douglas Dynamics, Inc., and Douglas Dynamics, Inc. (Western Products), the manufacturers of the snowplow attachment. Plaintiff's son sustained severe and discrete injuries to his head and brain (head injuries) and to his hip and leg (leg injuries) as well as lesser injuries to his arm. Plaintiff sought to prove at trial that a heavy hydraulic cylinder came loose from the snowplow attachment and struck his son's head, thereby causing the disabling brain injury. Plaintiff also sought to establish that a lower part of the snowplow attachment caused his son's leg injuries. Plaintiff produced expert testimony to that effect, and his attorney argued on summation that the head injuries would not have occurred but for the snowplow attachment and that Western Products consequently should be held 95% responsible for the injuries as a whole. Western Products produced expert proof that neither injury was caused or enhanced by the snowplow attachment.

The jury found Gabriel Assaad negligent in his operation of the vehicle and found such negligence to be a substantial factor in bringing about the injuries of plaintiff's son. The jury found William Gorley negligent in his operation of the pickup truck, but found that such negligence was not a substantial factor in bringing about the injuries. The negligence of Gabriel Assaad thus was found to be the sole proximate cause of the accident. The jury further found that the negligent design of the snowplow attachment caused additional injury to plaintiff's son and that plaintiff had proven the extent of "additional injuries" attributable to or caused by the defective design. On the issue of apportionment, the jury found Gabriel Assaad 95% responsible and Western Products 5% responsible for the injuries. The jury was not asked to find which of the discrete injuries sustained by plaintiff's son were caused or contributed to by the defective design.

The jury awarded past and future damages totaling approximately $48,000,000, before reduction to present value. In response to postverdict motions and cross motions, that award was reduced by Supreme Court, which further held that Western Products was not jointly and severally liable for the entire award of damages, but was severally liable for only 5% of the award. Ultimately, following the court's application of CPLR article 50-B, separate orders and judgments were entered awarding plaintiff approximately $17,000,000 against the Assaad defendants and approximately $1,300,000 against Western Products.

In appeal No. 1, the Assaad defendants and Western Products (defendants) appeal and plaintiff cross-appeals from an order, dated March 4, 1997, granting defendants' motions for a new trial on damages for loss of services only unless plaintiff agrees to reduce the award for loss of services from $2,500,000 to $15,000, and otherwise denying defendants' motions to reduce the verdict as excessive. In appeal No. 2, plaintiff appeals from an order, dated October 9, 1997, denying his motion to hold Western Products jointly and severally liable for all damages awarded by the jury. In appeal No. 3, defendants appeal and plaintiff cross-appeals from the order and judgment entered against the Assaad defendants. In appeal No. 4, defendant Western Products appeals and plaintiff cross-appeals from the order and judgment entered against Western Products.

With respect to the jury's apportionment of damages, we note at the outset that the separate and distinct head and leg injuries sustained by plaintiff's son distinguish this case from the situation addressed in *Ravo v Rogatnick* (70 NY2d 305). In *Ravo*, "the jury was unable to determine from the evidence adduced at trial the degree to which the defendants' separate acts of negligence contributed to the [indivisible brain injury]" (*Ravo v Rogatnick, supra,* at 312). The Court wrote: "Certainly, a subsequent tort-feasor is not to be held jointly and severally liable for the acts of the initial tort-feasor with whom he is not acting in concert in every case where it is difficult, because of the nature of the injury, to separate the harm done by each tort-feasor from the other * * * Here, however, the evidence established that plaintiff's brain damage was a single indivisible injury, and defendant failed to submit any evidence upon which the jury could base an apportionment of damage" (*Ravo v Rogatnick, supra,* at 312). Here, in contrast, the evidence established that the head and leg injuries are each indivisible but separate and distinct from one another. Moreover, the evidence adduced at trial would have allowed the jury to find that the negligent design caused or contributed to either or both of those injuries. To the extent that the alleged negligent design of the snowplow attachment might have been found by the jury to have been a cause of all of the injuries, joint and several liability should have been imposed against the manufacturer for those injuries, as is implied by the Court of Appeals in *Ravo* (*supra*).

Commentators that have considered this issue have recommended or noted that joint and several liability should not be imposed whenever injuries are separate and distinct and may

be differentiated with respect to their causation. For example, the Restatement (Third) of Torts: Products Liability, states:

"§ 16. Increased Harm Due to Product Defect

"(a) When a product is defective * * * and the defect is a substantial factor in increasing the plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for the increased harm.

"(b) If proof supports a determination of the harm that would have resulted from other causes in the absence of the product defect, the product seller's liability is limited to the increased harm attributable solely to the product defect.

"(c) If proof does not support a determination under Subsection (b) of the harm that would have resulted in the absence of the product defect, the product seller is liable for all of the plaintiff's harm attributable to the defect and other causes.

"(d) A seller of a defective product that is held liable for part of the harm suffered by the plaintiff under Subsection (b), or all of the harm suffered by the plaintiff under Subsection (c), is jointly and severally liable or severally liable with other parties who bear legal responsibility for causing the harm, determined by applicable rules of joint and several liability."

Harper, James and Gray, Torts § 10.1 states: "[W]here the independent concurring acts have caused distinct and separate injuries to the plaintiff, or where some reasonable means of apportioning the damages is evident, the court generally will not hold the tortfeasors jointly and severally liable" (Harper, James and Gray, Torts § 10.1, at 5 [2d ed]). Similarly, the Restatement (Third) of Torts: Apportionment of Liability provides:

"§ 26. Apportionment of Liability When Damages Can be Divided by Causation

"(a) When damages for an injury can be divided by causation, the factfinder first divides them into their indivisible component parts and separately apportions liability for each indivisible component part * * *

"(b) Damages can be divided by causation when the evidence provides a reasonable basis for the factfinder to determine:

"(1) that any legally culpable conduct of a party or other relevant person to whom the factfinder assigns a percentage of responsibility was a legal cause of less than the entire damages for which the plaintiff seeks recovery and

"(2) the amount of damages separately caused by that conduct.

"Otherwise, the damages are indivisible and thus the injury

is indivisible. Liability for an indivisible injury is apportioned [according to rules of joint and several liability]."

The Restatement (Second) of Torts states:

"§ 433 A. Apportionment of Harm to Causes

"(1) Damages for harm are to be apportioned among two or more causes where

"(a) there are distinct harms, or

"(b) there is a reasonable basis for determining the contribution of each cause to a single harm."

Finally, Prosser and Keeton, Torts § 52 states:

"Apportionment of Damages

"Once it is determined that the defendant's conduct has been a cause of some damage suffered by the plaintiff, a further question may arise as to the portion of the total damage sustained which may properly be assigned to the defendant, as distinguished from other causes. The question is primarily * * * one * * * of the feasibility and practical convenience of splitting up the total harm into separate parts which may be attributed to each of two or more causes. Where a factual basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm of which that defendant's conduct has been a cause in fact, it is likely that the apportionment will be made. Where no such basis can be found, the courts generally hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.

"The distinction is one between injuries which are reasonably capable of being separated and injuries which are not. If two defendants, struggling for a single gun, succeed in shooting the plaintiff, there is no reasonable basis for dividing the injury between them, and each will be liable for all of it. If they shoot the plaintiff independently, with separate guns, and the plaintiff dies from the effect of both wounds, there can still be no division, for death cannot be divided or apportioned except by an arbitrary rule devised for that purpose. If they merely inflict separate wounds, and the plaintiff survives, a basis for division exists, because it is possible to regard the two wounds as separate injuries; and the same is of course true as to wounds negligently inflicted. * * *

*"Damage Capable of Apportionment*

"Certain other results, by their nature, are more capable of apportionment. If two defendants independently shoot the plaintiff at the same time, and one wounds the plaintiff in the arm and the other in the leg, the ultimate result may be a

badly damaged plaintiff in the hospital, but it is still possible, as a practical matter, to regard the two wounds as separate wrongs. Mere coincidence in time does not make the two one tort, nor does similarity of design or conduct, without concert. Evidence may be entirely lacking upon which to apportion some elements of the damages, such as medical expenses, or permanent disability, or the plaintiff's pain and suffering; but this is not regarded as sufficient reason to hold one defendant liable for the entire harm, including damage inflicted solely by the other" (Prosser and Keeton, Torts § 52, at 345, 348 [5th ed]).

In light of the evidence adduced and the parties' contentions at trial, the jury should have been asked to find whether the negligent design enhanced the head injuries, the leg injuries, or both (see, Garcia v Rivera, 160 AD2d 274, 276-277, lv denied 77 NY2d 801; Cornier v Spagna, 101 AD2d 141, 146-147). Although the jury's finding that the design defect caused or contributed to the injuries of plaintiff's son necessarily required a finding with respect to the specific injuries caused or enhanced, the verdict sheet provided no means for reporting that finding to the court. That deficiency in the verdict sheet precludes us from ascertaining whether the jury found that the negligent design of the snowplow attachment enhanced the head injuries, the leg injuries, or both. We therefore vacate the intermediate order dated March 4, 1997, and we reverse the intermediate order dated October 9, 1997 and the final orders and judgments entered against the Assaad defendants and Western Products, respectively.

Nonetheless, we allow the verdict to stand in part and grant a new trial on limited issues only. In particular, we do not disturb the jury's findings in response to questions 1 through 4 of the verdict sheet relating to negligence and proximate cause as between the drivers of the vehicles. We grant a new trial on the remaining issues concerning Western Products' liability; the extent of plaintiff's damages; the proportion of total damages allocated to the head injuries and leg injuries, respectively; and the apportionment of liability between defendants with respect to the injuries of plaintiff's son (see, Garcia v Rivera, supra, at 276-277). If, on retrial, the jury finds that Western Products' negligence caused or enhanced the indivisible head injuries, then Western Products shall be jointly and severally liable for the damages allocated to the head injuries. If the jury finds that Western Products' negligence caused or enhanced the indivisible leg injuries, then Western Products shall be jointly and severally liable for the damages allocated to the leg injuries. If the jury finds that Western Products' negligence

caused or enhanced both the head and leg injuries, then Western Products shall be jointly and severally liable for all damages attributable to the head and leg injuries.

We further conclude that the court did not abuse its discretion in denying the motion of the Assaad defendants for leave to amend their answer to assert a cross claim against Western Products. That motion was made mid-trial, after plaintiff and the Assaad defendants had rested their cases, and after the absence of a cross claim had been noted by counsel for Western Products in his opening statement. Under the circumstances, Western Products would have been unduly prejudiced by the proposed amendment (cf., DiFlorio v Van Slyke, 234 AD2d 961, 962).

In view of our determination granting a new trial on damages, among other issues, we need not consider the remaining contentions of the parties, including their respective challenges to the excessiveness of various components of the jury's award and to the court's reduction of the award for loss of services (cf., Edbauer v Board of Educ. [appeal No. 3], 286 AD2d 999).

All concur except Hayes, J., who dissents and votes to affirm in the following Memorandum.

Hayes, J. (dissenting). In appeal No. 2, I respectfully dissent in part and vote to reverse the order and hold Western Products, Inc., a Division of Douglas Dynamics, Inc., and Douglas Dynamics, Inc. (Western Products) jointly and severally liable for all damages awarded by the jury. In my view, Supreme Court erred in determining that Western Products is not jointly and severally liable for all damages awarded by the jury. Contrary to the majority's position, it is not necessary in this case for a jury to find whether there was a single indivisible injury or which defendant caused which injuries. Joint and several liability is appropriate where, as here, "two or more [tortfeasors] act concurrently or in concert to produce a single injury" (Ravo v Rogatnick, 70 NY2d 305, 309). It is only when tortfeasors act neither concurrently nor in concert that a court should consider whether the tortfeasors should nevertheless be held jointly and severally liable because the nature of the injuries "are incapable of any reasonable or practicable division" among the multiple tortfeasors (Ravo v Rogatnick, supra, at 310).

Here, Western Products was properly found liable once the jury found that a defect in the design of the snowplow attached to the pickup truck aggravated or enhanced the injuries of plaintiff's son (see generally, Bolm v Triumph Corp., 33 NY2d 151, 156-159). The jury then found Gabriel A. Assaad 95% responsible and Western Products 5% responsible for the

injuries of plaintiff's son. In my view, under the circumstances of this case, Western Products is jointly and severally liable for all of the injuries sustained by plaintiff's son. This is not a second collision case with successive tortfeasors. Rather, plaintiff's son was injured as the result of one collision between the vehicle driven by Gabriel Assaad and owned by Momdouh A. Assaad (Assaad defendants) and the pickup truck that was equipped with the snowplow attachment.

Furthermore, contrary to the majority's position, the proof did not establish that there was any reasonable way to allocate the causation of the injuries of plaintiff's son between Western Products or the Assaad defendants. Plaintiff's son sustained multiple injuries, including a skull fracture, a fractured leg, a fractured pelvis, a fractured elbow, a perforated hearing drum with resulting loss of hearing, and depression. The proof did not establish that those injuries could be divided. I would therefore reverse the order in appeal No. 2 and hold Western Products jointly and severally liable, affirm the order and judgment in appeal No. 3 against the Assaad defendants and vacate the order and judgment in appeal No. 4 against Western Products in accordance with my decision in appeal No. 2. (Appeals from Order and Judgment of Supreme Court, Onondaga County, Major, J.—Damages.) Present—Pigott, Jr., P. J., Hayes, Wisner, Kehoe and Burns, JJ.