894 F.2d 299
 58 USLW 2440, 15 Fed.R.Serv.3d 1029
 Leland L. LOCKARD, Appellee, Lynette Lockard,
v.
MISSOURI PACIFIC RAILROAD COMPANY, a corporation, Appellant,
Rosella Ray d/b/a Rosella Ray's Boarding House.
Leland L. LOCKARD, Lynette Lockard, Appellees,
v.
MISSOURI PACIFIC RAILROAD COMPANY, a corporation,
Rosella Ray d/b/a Rosella Ray's Boarding House, Appellant.
 Nos. 89-1068, 89-1069.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: Sept. 25, 1989.
Decided Jan. 19, 1990.
 
 R. Dennis Osterman, Bethesda, Md., for Missouri Pacific.
 Robert D. Mullin, Jr., Omaha, Neb., for Rosella Ray.
 Jeanne L. Sathre, Wood River, Ill., for appellees.
 Before LAY, Chief Judge, ARNOLD and BEAM, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Leland Lockard sued Missouri Pacific Railroad Company (MoPac) pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. Secs. 51-60 (1982), and the jury awarded $600,000 reduced by a finding of twenty percent contributory negligence. Leland Lockard also sued Rosella Ray, d/b/a Rosella Ray's Boarding House, for negligence under Nebraska law, and the jury awarded $200,000 reduced by a finding of twenty-five percent contributory negligence. Lynette Lockard sued Ray for loss of consortium under Nebraska law, and the jury awarded $50,000. Both defendants appeal. We vacate the judgments against Ray for lack of federal jurisdiction, and affirm the judgment against MoPac.
 
 I. BACKGROUND
 
 2
 In November of 1984, MoPac and Ray entered into a written agreement for the lodging of MoPac's crew members. Ray agreed to "furnish, maintain and operate motel lodging facilities" for a one-year period and to "provide 24-hour per day motel management." MoPac agreed to pay Ray on a monthly basis.
 
 
 3
 Leland Lockard was assigned as a fireman to the crew of a local MoPac train. On December 14, 1984, Lockard reported to work in Auburn, Nebraska, from which the train was to depart for Crete, Nebraska. The train was regularly scheduled to depart from Auburn on Mondays, Wednesdays, and Fridays, with a layover in Crete on those evenings and a return to Auburn on the following mornings. Lockard and the crew arrived in Crete at approximately 10:00 p.m. on December 14, and checked into Rosella Ray's Boarding House.
 
 
 4
 When Lockard and the crew arrived in Crete, approximately four to five inches of new snow covered the ground. Lockard testified that the sidewalk and the steps leading up to the sole entrance of the boarding house had been partially cleared.
 
 
 5
 Lockard used the steps when he left for dinner that evening, and again when he returned. At 6:30 a.m. on December 15, 1984, Lockard used the steps when he left the boarding house for breakfast. It had rained during the night and, as the temperature was below freezing, there was a glaze of ice on the steps. Lockard held on to the railing as he departed. It was drizzling when Lockard returned to his room after breakfast. At 7:15 a.m., when Lockard left the boarding house to report for work, he slipped on the icy top step and fell down the steps on his back and hip.
 
 
 6
 The plaintiffs recovered money damages against the defendants as set forth. The trial court overruled defendants' motions for a new trial as well as their motions for judgments n.o.v.II. DISCUSSION
 
 A. Pendent Party Jurisdiction[1]
 
 7
 Lockard's FELA claim alleged negligence arising from MoPac's failure to: (1) provide Lockard with a reasonably safe place to work and/or lodge; (2) maintain the boarding house steps in a safe condition when it should have known the steps were icy; (3) inspect the steps; and (4) remove the ice from the steps. The complaint also joined the state claims against Ray. No independent basis of federal jurisdiction existed over Ray.[2]
 
 
 8
 The question whether federal jurisdiction is properly asserted over Ray must be evaluated in light of Finley v. United States, --- U.S. ----, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).[3] In Finley, the Supreme Court held that the Federal Tort Claims Act (FTCA) authorizes suit only against the United States and not against other parties as to whom no independent basis of federal jurisdiction exists--so-called "pendent parties." Id. 109 S.Ct. at 2010. The Court examined the text of the FTCA which provides that "the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States," 28 U.S.C. Sec. 1346(b) (1982), and held that " 'against the United States' means against the United States and no one else." Finley, 109 S.Ct. at 2008 (emphasis added). Applying this interpretive rule, we must similarly conclude that the FELA authorizes jurisdiction over railroads and no one else.
 
 
 9
 Prior to Finley, the issue of whether the FELA permitted pendent party jurisdiction was far from settled. The uncertainty stemmed from the Court's holding in Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), that a federal court may exercise pendent party jurisdiction only after determining "that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." Id. at 18, 96 S.Ct. at 2422 (emphasis added).[4] This standard persuaded some courts to read Aldinger narrowly, concluding that pendent party jurisdiction was permitted under the FELA because it had not been implicitly or explicitly prohibited by Congress.[5] Other courts, however, reached a contrary conclusion.[6]
 
 
 10
 In our view, Finley resolves the issue with a clear rule of statutory interpretation. Under Finley, pendent party jurisdiction does not exist merely by the fact Congress has failed to negate it. Rather, pendent party jurisdiction exists only where Congress has affirmatively granted such jurisdiction. Finley, 109 S.Ct. at 2009.[7] The Court in Finley concluded its holding by stating: "All our cases--Zahn [v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) ], Aldinger, and Kroger [Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274]--have held that a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties. Our decision today reaffirms that interpretative rule; the opposite would sow confusion." Id. 109 S.Ct. at 2010. This rule applies even where the claims against the additional parties " 'derive from a common nucleus of operative fact,' " and are such that a plaintiff " 'would ordinarily be expected to try them [all] in one judicial proceeding.' " Id. at 2006 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). As the Court in Finley stated: "[W]ith respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." 109 S.Ct. at 2007.
 
 
 11
 Plaintiffs argue that Finley does not control this case because the jurisdictional grant under the FELA is broader than the jurisdictional grant under the FTCA. We see no relevant difference in the two provisions, however. As we have noted, the FTCA confers jurisdiction over "civil actions on claims against the United States." 28 U.S.C. Sec. 1346(b). By comparison, the FELA provides that "[e]very common carrier by railroad * * * shall be liable * * *," 45 U.S.C. Sec. 51 and, further, that "[u]nder this chapter an action may be brought in a district court of the United States, * * *." 45 U.S.C. Sec. 56 (emphasis added). It is clear from this language that the FELA accomplishes in two steps what the FTCA accomplishes in one: a grant of jurisdiction over claims involving particular parties, in this case FELA claims against railroads.[8] Therefore, Finley's holding that such a jurisdictional grant "does not itself confer jurisdiction over additional claims by or against different parties," 109 S.Ct. at 2006, is equally applicable under the FELA.
 
 
 12
 Our decision that pendent party jurisdiction is not authorized by the FELA is less harsh than the Finley holding in one important respect. The FTCA does not permit suit against the government in state court. See 28 U.S.C. Sec. 1346(b). Although this factor was noted in Finley, the Court nevertheless found the statutory language controlling. The Court stated:
 
 
 13
 Because the FTCA permits the Government to be sued only in federal court, our holding that parties to related claims cannot necessarily be sued there means that the efficiency and convenience of a consolidated action will sometimes have to be forgone in favor of separate actions in state and federal courts. We acknowledged this potential consideration in Aldinger, 427 U.S., at 18, 96 S.Ct., at 2422, but now conclude that the present statute permits no other result.
 
 
 14
 109 S.Ct. at 2010.
 
 
 15
 By contrast, FELA suits may be brought in state court as well as federal court. 45 U.S.C. Sec. 56. Removal to federal court by the railroad is prohibited. 28 U.S.C. Sec. 1445(a) (1982). Therefore, FELA plaintiffs do not necessarily face the dilemma of bifurcated lawsuits as do their FTCA counterparts. If FELA plaintiffs wish to sue both the railroad and pendent parties in a single forum, they may do so in state court.[9]
 
 
 16
 In construing acts of Congress, we must be mindful that "[w]hat is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts." Finley, 109 S.Ct. at 2010. Applying the clear interpretive rule set out by the Supreme Court in Finley, we hold that federal jurisdiction does not exist over Rosella Ray in this case. We therefore vacate the judgments against her and order that the claims against her be dismissed.
 
 B. FELA Claim
 
 17
 MoPac argues that there is insufficient evidence of its own negligence. MoPac asserts that Lockard's injuries were caused by unforeseeable weather conditions occurring on property owned and maintained by Ray. Thus, MoPac argues, to sustain liability here would make it an absolute insurer of its employees whether an employee was on or off railroad property, and whenever there was a dangerous change in the weather.
 
 
 18
 We respectfully disagree. It is clear MoPac had a duty to make its workplace safe, and lodging facilities, in certain circumstances, can be part of the workplace. In addition, any negligence of MoPac's statutory agent, Rosella Ray, could be imputed to MoPac.
 
 
 19
 The FELA imposes a nondelegable duty upon the railroad to provide its employees with a safe place to work.[10] See Shenker v. Baltimore & O.R.R., 374 U.S. 1, 7, 83 S.Ct. 1667, 1671-72, 10 L.Ed.2d 709 (1963); Ackley v. Chicago & N.W. Transp. Co., 820 F.2d 263, 267 (8th Cir.1987). This duty is broader than a general common law duty of care. See Ackley, 820 F.2d at 267. The railroad's nondelegable duty extends to the property of third parties and includes an obligation to inspect the premises of the third party and to protect the railroad's employees from dangerous conditions. See Empey v. Grand Trunk W.R.R., 869 F.2d 293, 296 (6th Cir.1989).
 
 
 20
 MoPac had a long-term lodging contract with Ray. The first contract was executed in 1972, and MoPac and Ray continued to enter new agreements until the contract at issue was signed in November of 1984. Pursuant to these agreements, five out of the eight rooms at Rosella Ray's Boarding House were reserved for MoPac's employees. Lockard testified that he always stayed at Rosella Ray's because it was approved by MoPac. Ray was therefore an agent of MoPac. See Sinkler v. Missouri Pac. R.R., 356 U.S. 326, 331-32, 78 S.Ct. 758, 762-63, 2 L.Ed.2d 799 (1958) (when employee's injury caused by third party performing contractual operational activities of railroad, third party is "agent" of railroad under FELA). When the railroad provides lodging for its employees, this is an operational activity for which negligence may be imputed to the railroad. See Empey, 869 F.2d at 296-97.
 
 
 21
 A jury's verdict should not be overturned unless there is no basis for finding that the employer's negligence played a part in the employee's injury. See Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506-07, 77 S.Ct. 443, 448-49, 1 L.Ed.2d 493 (1957). This circuit has stated that under the FELA, "the right of the jury to pass upon the question of fault and causality must be most liberally viewed. * * * [T]he jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions." Ybarra v. Burlington N., 689 F.2d 147, 149 (8th Cir.1982) (quoting Chicago, Rock Island & Pac. R.R. v. Melcher, 333 F.2d 996, 999 (8th Cir.1964)). Our review of the record indicates that there was sufficient evidence to support a finding that MoPac's negligence contributed to Lockard's injury. There was also sufficient evidence for the jury to determine that Ray was negligent, and that this negligence was imputable to MoPac.
 
 
 22
 MoPac also asserts that the trial court erred in instructing the jury that Lockard was an employee as a matter of law, and that any negligence of Ray could be imputed to MoPac. We find these claims to be without merit. In Empey, the court held that "an employee who is injured while he avails himself of housing which his employer has provided and implicitly encouraged him to use is within the scope of his employment for the purposes of the FELA." 869 F.2d at 295. The trial court's instruction on imputed negligence was approved in Empey, 869 F.2d at 296-97, and Payne v. Baltimore & O.R.R., 309 F.2d 546, 549 (6th Cir.1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963). Thus, we find that the district court did not err in its instruction to the jury.
 
 C. Inconsistent Jury Verdicts
 
 23
 MoPac argues that, in any event, the trial court committed reversible error in entering judgment on a jury verdict that was internally inconsistent. The jury found that MoPac was liable for $600,000 reduced by a finding of twenty percent contributory negligence. The jury also found that Ray was liable for $200,000 reduced by a finding of twenty-five percent contributory negligence. The district court found that "[t]he differing standards of liability for the two defendants provide a sufficient, reasonable basis for finding that the answers to the interrogatories and the different damage awards are not fatally inconsistent." Lockard v. Missouri Pac. R.R., No. 86-0-283, slip op. at 8 (D.Neb. Nov. 16, 1988).
 
 
 24
 The verdict form used by the district court sought a general verdict accompanied by answers to special interrogatories. Federal Rule of Civil Procedure 49(b) states that when the answers to the special interrogatories are inconsistent with each other and with the general verdict, the court should not enter judgment but return the answers to the jury or order a new trial.[11] However, if trial counsel fails to object to any asserted inconsistencies and does not move for resubmission of the inconsistent verdict before the jury is discharged, the party's right to seek a new trial is waived. See White v. Celotex Corp., 878 F.2d 144, 146 (4th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989); Ludwig v. Marion Laboratories, Inc., 465 F.2d 114, 118 (8th Cir.1972). The purpose of the rule is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury. White, 878 F.2d at 146. This prevents a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict. Id.
 
 
 25
 In this case, the jury's verdict was returned on July 1, 1988. The district court entered judgment on the verdict on August 18, 1988. On August 25, 1988, MoPac filed a Motion for J.N.O.V. or for a New Trial. In its brief in support of the motion, MoPac noted that the verdicts were inherently inconsistent and that a new trial would be necessary. The district court took the matter under advisement and subsequently overruled the motion.
 
 
 26
 There is no indication in the record that MoPac ever moved to have the inconsistencies resubmitted to the jury for reconciliation. MoPac did not object, nor did it file its motion for a new trial until after the jury had been discharged. After reading the instructions and the verdict form to the jury, the district court allowed trial counsel to make any objections or take any exceptions to the court's charge. See Trial Transcript at 566-67. MoPac did not object to the verdict form at that time. Thus, we find that MoPac waived its right to a new trial based upon inconsistencies in the verdict returned by the jury.
 
 
 27
 Moreover, MoPac has not been prejudiced by the district court's entry of judgment on the verdict. The jury apparently intended to apportion total damages of $800,000 between the two defendants. This was the view of the district court, and it comports with the Supreme Court's holding that:
 
 
 28
 it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." Atlantic & Gulf Stevedores, Inc., v. Ellerman Lines, Ltd., 369 U.S. 355, 364 [82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962) ]. We therefore must attempt to reconcile the findings, by exegesis if necessary, * * * before we are free to disregard the jury's special verdict and remand the case for a new trial.
 
 
 29
 Gallick v. Baltimore & O.R.R., 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963) (citations omitted); see also Bell v. Mickelsen, 710 F.2d 611, 618 (10th Cir.1983) (apportionment of damages between two defendants indicates jury intended to award sum of the two amounts). We agree, however, that apportionment of the damages was improper in this case. The law is clear that where there is but one indivisible injury caused by the joint or concurrent acts of two tortfeasors, each tortfeasor is jointly and severally liable for the entire amount of damages. See, e.g., Mitchell v. Volkswagenwerk, AG, 669 F.2d 1199, 1203 (8th Cir.1982); Restatement (Second) of Torts Sec. 433A (1965). The judgment now standing against MoPac is $480,000--well below the liability it would be facing had the district court properly entered judgment under a joint and several liability theory. Therefore any prejudice resulting from an inconsistent verdict or the entry of judgment thereon lies solely with the plaintiff who did not raise the issue below, and has not appealed the judgment.[12]
 
 III. CONCLUSION
 
 30
 We have considered the remainder of the arguments asserted by the parties and find them to be without merit.
 
 
 31
 Accordingly, we affirm the judgment against MoPac. We vacate the judgments and dismiss the claims against Ray for lack of federal jurisdiction. We do so without prejudice to any rights the parties may have against Ray in state court.
 
 
 32
 BEAM, Circuit Judge, concurring in part and dissenting in part.
 
 
 33
 I concur in the result reached by the majority with regard to the inconsistent jury verdicts. I disagree with its speculation that the jury intended to apportion total damages of $800,000 between the two defendants. I believe, however, that the judgments are susceptible to reconciliation under rules of law available to the district court.
 
 
 34
 I dissent with regard to the majority holding on the issue of pendent party jurisdiction.
 
 
 35
 The district court entered judgment on both the federal and the state claims before the United States Supreme Court decided Finley v. United States, --- U.S. ----, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). As indicated by the majority, in Finley, the Court held that the Federal Tort Claims Act (FTCA) prohibited federal district courts from asserting pendent party jurisdiction in cases brought pursuant to the FTCA.[13] The Court examined the text of the FTCA which provides that "the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States" for certain torts of federal employees acting within the scope of their employment. 28 U.S.C. Sec. 1346(b). The Court concluded that the "statute here defines jurisdiction in a manner that does not reach defendants other than the United States." Id. 109 S.Ct. at 2009.
 
 
 36
 In Finley, the Supreme Court explained the development of the doctrines of "pendent claim" and "pendent party" jurisdiction. The Court cited United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in which the concept of pendent claim jurisdiction was upheld. The Gibbs Court allowed parties properly before the court to litigate both federal and nonfederal claims that "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." Finley, 109 S.Ct. at 2006 (quoting Gibbs, 383 U.S. at 725, 86 S.Ct. at 1138).
 
 
 37
 The Supreme Court in Finley then distinguished the doctrine of pendent claim jurisdiction from pendent party jurisdiction. with pendent party jurisdiction, courts assert jurisdiction over additional parties that are not involved in the federal claims properly before the court. In Finley, the Supreme Court relied on Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), for a discussion of pendent party jurisdiction.
 
 
 38
 In Zahn, a plaintiff had a diversity action claim for less than the statutory jurisdictional minimum of $10,000. The plaintiff attempted to append his claim to the jurisdictionally adequate claims of other members of his class. The Zahn Court rejected this approach based on "the statutes defining the jurisdiction of the District Court." Zahn, 414 U.S. at 292, 94 S.Ct. at 507.
 
 
 39
 In Aldinger, the Court held that there was no pendent party jurisdiction over a county in a 42 U.S.C. Sec. 1983 claim. After examining the civil rights jurisdictional statute, 28 U.S.C. Sec. 1343(3), the Court inferred a congressional intent to protect counties from Sec. 1983 lawsuits. The Supreme Court stated that:
 
 
 40
 [i]n short, as against a plaintiff's claim of additional power over a "pendent party," the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power has been extended by Congress.
 
 
 41
 Resolution of a claim of pendent-party jurisdiction, therefore, calls for careful attention to the relevant statutory language.
 
 
 42
 Aldinger, 427 U.S. at 17, 96 S.Ct. at 2421.
 
 
 43
 In Kroger, the Supreme Court did not allow the exercise of jurisdiction over the asserted nonfederal claim. Pursuant to the diversity statute, 28 U.S.C. Sec. 1332(a)(1), the Court inferred a congressional concern to strictly confine jurisdiction to situations in which there was diversity between all of the defendants and all of the plaintiffs. The Court stated that "there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim." Kroger, 437 U.S. at 373, 98 S.Ct. at 2402.
 
 
 44
 Zahn, Aldinger, and Kroger emphasize that before exercising pendent party jurisdiction, a court must examine the federal statute under which primary jurisdiction is asserted. The court must determine whether the words or history of the statute suggest that Congress expressly or impliedly prohibited the exercise of jurisdiction over the asserted nonfederal claim.[14] Thus, based on its discussion of the various pendent party cases and its focus on the statutory language, the Supreme Court in Finley did not eliminate pendent party jurisdiction. In Finley, the Supreme Court stated that:
 
 
 45
 it is not that the "statutory power to decide this case" is defeated by the joinder of a private party for purposes of a claim over which the District Court has no independent jurisdiction, but that the statutory power to decide a case including such a claim simply does not exist, since the FTCA provides jurisdiction only for claims against the United States.
 
 
 46
 Finley, 109 S.Ct. at 2009 n. 6. The Court explained its decision by stating that "[w]hat is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts." Id. at 2010. The Court's focus, therefore, was, as indicated, on the proper interpretation of the FTCA language. Accordingly, our focus must be on an interpretation of the language of the FELA.
 
 The FELA provides, in relevant part, that:
 
 47
 Every common carrier by railroad while engaging in commerce between any of the several States or Territories, ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
 
 
 48
 45 U.S.C. Sec. 51.
 
 
 49
 As can be seen, the range of the FELA is much broader than the reach of the FTCA. The FELA does not provide that the district courts "shall have exclusive jurisdiction" of civil actions based on claims against the railroad. Rather, the FELA discusses liability resulting from the negligence of parties other than the railroad. As a result numerous courts have held that the language of the FELA allows assertion of pendent party jurisdiction. See Madarash v. Long Island R.R., 654 F.Supp. 51, 54 (E.D.N.Y.1987) (pendent party jurisdiction proper because nothing in FELA negates such jurisdiction); Shogren v. Chicago, Milwaukee, St. P. & Pac. R.R., 630 F.Supp. 233, 234 (D.Minn.1986) (nothing in statute conferring FELA jurisdiction suggests that Congress negated exercise of jurisdiction over asserted nonfederal claim); Potter v. Rain Brook Feed Co., 530 F.Supp. 569, 579 (E.D.Cal.1982) (Congress has not precluded exercise of pendent jurisdiction in actions under FELA); DeMaio v. Consolidated Rail Corp., 489 F.Supp. 315, 316 (S.D.N.Y.1980) (Congress did not explicitly or implicitly negate pendent party jurisdiction under FELA and thus, injured railroad employee was allowed to sue railroad's hired taxicab owner when taxicab hit another car).
 
 
 50
 Therefore, I would follow the Supreme Court's direction and adjudicate "against a background of clear interpretive rules, so that [Congress] may know the effect of the language it adopts." Finley, 109 S.Ct. at 2010. Since the Supreme Court did not expressly eliminate pendent party jurisdiction, and Congress did not provide the district courts with "exclusive jurisdiction" over FELA actions, I would hold that pendent party jurisdiction was proper in this case, and the district court properly entertained Lockard's state law claims against Rosella Ray.
 
 
 
 [1]
 The issue of federal jurisdiction over Rosella Ray was not raised by the parties below nor addressed by the district court. The issue was raised for the first time by this court at oral argument, and was subsequently briefed by the parties
 
 
 [2]
 No diversity of citizenship under 28 U.S.C. Sec. 1332 (1982) was asserted by the plaintiffs
 
 
 [3]
 In Finley, a widow brought an action in federal court against the United States after her husband and two children were killed in an airplane accident. She sued under the FTCA, alleging that the Federal Aviation Administration had negligently maintained runway lights at the airfield where the crash occurred. The complaint was later amended to include state claims against non-federal defendants
 
 
 [4]
 In Aldinger, the plaintiff sued individual defendants under 42 U.S.C. Sec. 1983, and sought to append to the suit state-law claims against a county. At that time, under Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), counties were exempt from Sec. 1983 liability. The Court held that the jurisdictional statute under which the suit was brought, 28 U.S.C. Sec. 1343, did not mean to confer jurisdiction over parties that had been specifically excluded from Sec. 1983 liability. Aldinger, 427 U.S. at 17, 96 S.Ct. at 2421-22
 
 
 [5]
 See Madarash v. Long Island R.R., 654 F.Supp. 51, 54 (E.D.N.Y.1987); Shogren v. Chicago, Milwaukee, St. P. & Pac. R.R., 630 F.Supp. 233, 234 (D.Minn.1986); Patter v. Rain Brook Feed Co., 530 F.Supp. 569, 579 (E.D.Cal.1982); DeMaio v. Consolidated Rail Corp., 489 F.Supp. 315, 316 (S.D.N.Y.1980)
 
 
 [6]
 See Young v. Consolidated Rail Corp., 710 F.Supp. 192, 194 (E.D.Mich.1989); Stinefelt v. Baltimore & Ohio R.R., 664 F.Supp. 989, 990 (D.Md.1987); Scheck v. National R.R. Passenger Corp., 1985 WL 3172 (E.D.Pa.1985); Shields v. Consolidated Rail Corp., 530 F.Supp. 400, 401-02 (S.D.N.Y.1981)
 
 
 [7]
 The petitioner in Finley attempted to find an "affirmative grant" of jurisdiction by reason of the change made in the comprehensive 1948 revision of the Judicial Code. The Court specifically rejected this argument. The Court stated: "The statute here defines jurisdiction in a manner that does not reach defendants other than the United States." 109 S.Ct. at 2009
 Justice Blackmun in dissent recognized the holding of the majority to turn on the issue of whether an affirmative grant of jurisdiction appears in the statute. However, he disagreed that this should be the issue. He stated:
 If Aldinger v. Howard * * * required us to ask whether the Federal Tort Claims Act embraced "an affirmative grant of pendent-party jurisdiction," * * * I would agree with the majority that no such specific grant of jurisdiction is present. But, in my view, that is not the appropriate question under Aldinger. I read the Court's opinion in that case, rather, as requiring us to consider whether Congress has demonstrated an intent to exempt "the party as to whom jurisdiction pendent to the principal claim" is asserted from being haled into federal court.
 Finley, 109 S.Ct. at 2010 (Blackmun, J., dissenting).
 
 
 [8]
 Plaintiffs argue that Ray's status as a statutory agent of the railroad makes a difference. We fail to see how. Although the FELA does make railroads liable for the negligence of their officers, agents, and employees, see 45 U.S.C. Sec. 51, the statute nevertheless imposes liability only on railroads--not on railroads and their agents. Plaintiffs concede as much by basing their claims against Ray solely on Nebraska law. By the same token, the FTCA makes the federal government liable for the acts of its agents. See 28 U.S.C. Secs. 1346(b), 2674 (1982). Yet, the Court did not even mention this as a factor in Finley
 
 
 [9]
 Even prior to Finley, this was an important factor in some court decisions holding pendent party jurisdiction inapplicable to the FELA. See Young, 710 F.Supp. at 194; Stinefelt, 664 F.Supp. at 990; Scheck, 1985 WL 3172 at 4-5
 
 
 [10]
 The FELA provides that every common carrier by railroad shall be liable in damages to its employees who are injured "from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. Sec. 51
 
 
 [11]
 Fed.R.Civ.P. 49(b) provides in relevant part:
 (b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. * * * When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.
 
 
 [12]
 This analysis also disposes of MoPac's argument regarding the inconsistency in the jury's findings as to the percentage of contributory negligence. Even if we were to assume that the higher percentage--25%--should apply, MoPac still is not prejudiced by the existing $480,000 judgment since under joint and several liability MoPac would be liable for $800,000 reduced by 25%, or $600,000
 
 
 [13]
 In Finley, a woman brought a tort action in state court after her husband and two children were killed in a twin-engine airplane accident at the San Diego, California, airfield. The woman sued the San Diego Gas and Electric Company and the city of San Diego for negligence in the positioning of the electric transmission lines that the plane struck during its approach to the airfield, and for negligence in the maintenance of the runway lights. The woman subsequently sued the United States in the United States District Court for the Southern District of California when she discovered that the Federal Aviation Administration was responsible for the runway lights. This claim based jurisdiction on the FTCA. A year later, the woman moved to amend the federal complaint to include the state claims against the original defendants. The district court granted the motion based on United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and "pendent-party" jurisdiction. The district court certified an interlocutory appeal to the Ninth Circuit Court of Appeals. The Ninth Circuit summarily reversed because it had categorically rejected pendent-party jurisdiction under the FTCA in an earlier opinion. The Supreme Court granted certiorari "to resolve a split among the Circuits on whether the FTCA permits an assertion of pendent jurisdiction over additional parties." Finley, 109 S.Ct. at 2005
 
 
 [14]
 The majority opinion states that "pendent party jurisdiction exists only where Congress has affirmatively granted such jurisdiction" and cites Finley, 109 S.Ct. at 2009. There is nothing on page 2009 that supports this conclusion. Rather, the Supreme Court explains the petitioner's argument that the rewording of the FTCA has created an affirmative grant of pendent party jurisdiction. The Supreme Court disagreed with this interpretation of the FTCA but did not decide Finley on that basis. Thus, even considering Justice Blackmun's analysis of the majority opinion as expressed in his dissent, id. at 2010, I believe that the majority opinion misinterprets Finley