896 F.Supp. 1330 (1995)
Marshall MAZYCK, Plaintiff,
v.
LONG ISLAND RAILROAD COMPANY (LIRR), Gregory Staff, Richard Staff and Alan Scott, Defendants.
No. 88-CV-1855 (JS).
United States District Court, E.D. New York.
August 21, 1995.
*1331 Kranz, Davis & Hersh by Nancy D. Wigler, Hauppauge, NY, for plaintiff.
Shaub, Ahmuty, Citrin & Spratt by Steven J. Ahmuty, Jr., Lake Success, NY, Marvin Kornberg, Kew Gardens, NY, Joseph A. Faraldo, Kew Gardens, NY, for defendants.

MEMORANDUM AND ORDER
SEYBERT, District Judge:
In the instant action brought by plaintiff Marshall Mazyck under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, defendants Long Island Railroad Company (LIRR), Richard Staff and Alan Scott move to set aside the jury's verdict, dated June 30, 1994. In its verdict, the jury found each of these defendants liable to the plaintiff for injuries sustained in an incident occurring on August 30, 1985, wherein the plaintiff, an off-duty police officer employed by the LIRR, was beaten by codefendant Gregory Staff on a "deadhead car" operated by the LIRR. The jury found the LIRR liable to the plaintiff under the FELA for breaching its duty of providing a reasonably safe place in which to work; the liability of Richard Staff and Alan Scott, meanwhile, was premised upon the state-law tort of assault. The remaining codefendant, Gregory Staff  who does not have an application pending before the Court  conceded liability to the tort of battery prior to the commencement of trial.
By Memorandum and Order dated April 28, 1995, the Court denied the post-verdict motions of defendants LIRR, Richard Staff and Alan Scott for judgment as a matter of law, or in the alternative, for a new trial, with respect to the incidence of liability. In this same Memorandum and Order, the Court also denied the LIRR's application to strike the testimony of Police Officer Zabbara, who testified at trial as an expert witness on behalf of the plaintiff. The Court, however, held in abeyance the defendants' applications for a new trial on the issue of damages, including consideration of the extent of their joint and several liability therefor, pending the submission of a stipulation by counsel setting forth the discounted present value of that portion of the damages award attributable to the plaintiff's future pain and suffering.
The parties have since stipulated to the amount of $436,932.80 as constituting the discounted present value of the jury's award of $605,000.00 for future pain and suffering to be incurred by the plaintiff over his remaining life expectancy of 36 years. See Stipulation dated May 15, 1995; Docket # 46, at 3 (Supplemental Verdict Form dated June 30, 1994) (jury finding of remaining life expectancy of 36 years). In view of this stipulation, the jury's compensatory damages award, as adjusted, totals $679,450.57, and is computed as follows:

*1332
 A. Loss of earnings $ 25,017.77
 B. Pain and suffering from the
 date of the injury (August
 30, 1985) through the date of
 verdict (June 30, 1994) 217,500.00
 C. Future pain and suffering 436,932.80
 ____________
 TOTAL $ 679,450.57
 ============

See Docket # 46 (Supplemental Verdict Form dated June 30, 1994). In addition, the jury awarded the plaintiff $200,000.00 in punitive damages as against defendant Gregory Staff. See Docket # 47, at 6 (Verdict Form dated June 27, 1994).
The Court refers the reader to its Memorandum and Order dated April 28, 1995 for a fuller discussion of the substantive bases for the imposition of liability upon the defendants. The Court now turns to address the issues held in abeyance in its April 28th Memorandum and Order, as well as a jurisdictional issue concerning pendent parties under the FELA that the Court now raises sua sponte.

DISCUSSION

I. Joint and Several Liability of Tortfeasors for Full Amount of Plaintiff's Injury
The defendant LIRR moves for an order absolving it from joint and several liability to the plaintiff for the full amount of the jury's compensatory damages award. Rather, the LIRR contends that it should adjudged severally liable only for its apportioned share of the damages as reflected on the supplemental verdict form. On this form, in responding to an interrogatory, the jury indicated that $381,383.00 in damages was caused by the LIRR. Of this amount, $272,250.00 pertained to future pain and suffering, and therefore was subject to reduction to present value. See Docket # 46, at 3 (Supplemental Verdict Form dated June 30, 1994). It should be noted, however, that this apportionment of damages was separate and apart from the jury's allocation of 45% of the fault for the incident to the LIRR for purposes of contribution. See Docket # 47, at 13 (Verdict Form dated June 27, 1994). As it turns out, however, this amount of $381,383.00 constitutes precisely 45% of $847,517.77, the total amount of compensatory damages that the jury found the plaintiff to have sustained, before reduction to present value of the amount attributable to future pain and suffering. The Court further notes that the jury was not specifically instructed concerning the apportionment of indivisible injuries.
The plaintiff, meanwhile, argues that notwithstanding the jury's apportionment of damages, all of the defendants, as a matter of law, are jointly and severally liable to the plaintiff for the full amount of the compensatory damages award because the plaintiff has sustained an indivisible injury. According to the plaintiff, any ruling to the contrary would undermine Congress' intent, in enacting the FELA, to impose liability upon the railroad for injuries caused "in whole or in part" by the employer's negligence, 45 U.S.C. § 51, and further, would contravene apportionment principles of federal common law. Insofar as the imposition of joint and several liability would be at odds with the jury's apportionment of damages, the Court's construes this as an application to modify the jury's verdict as a matter of law on account of plain error.
Under section 1 of the FELA, 45 U.S.C. § 51, the railroad is "liable in damages for any injury or death `resulting in whole or in part from the negligence' of any of its `officers, agents, or employees.'" Bailey v. Central Vermont Ry., 319 U.S. 350, 352, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444 (1943) (quoting 45 U.S.C. § 51). The rights created by the FELA "are federal rights protected by federal rather than local rules of law." Id. at 352, 63 S.Ct. at 1063 (citations omitted). These "federal rules have been largely fashioned from the common law except as Congress has written into the [FELA] different standards." Id. at 352, 63 S.Ct. at 1064 (citations omitted); see Consolidated Rail Corp. v. Gottshall, ___ U.S. ___, ___, 114 S.Ct. 2396, 2403, 129 L.Ed.2d 427 (1994) ("`FELA jurisprudence gleans guidance from common-law developments....'") (quoting Atchison, Topeka & Santa Fe Ry. v. Buell, 480 U.S. 557, 568, 107 S.Ct. 1410, 1417, 94 L.Ed.2d 563 (1987)).
There is nothing in the language of the FELA to suggest that Congress, by enacting *1333 this statute, intended to abrogate the common-law principles of joint and several liability.[1]See Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1430 (5th Cir.1988) (noting that FELA did not modify the common-law rule of joint liability), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); St. Louis Southwestern Ry. v. Board of County Comm'rs, 716 F.Supp. 13, 14 (D.Kan.1989) ("FELA makes no provision for the reduction of damages recoverable by an employee against the carrier on account of the fault of any third person.") (quotations and citations omitted). Instead, courts that have considered this question have concluded that the well-established principles of joint and several liability apply to cases under the FELA. See Lockard v. Missouri Pac. R.R., 894 F.2d 299, 305 (8th Cir.), cert. denied, 498 U.S. 847, 111 S.Ct. 134, 135, 112 L.Ed.2d 102 (1990); Tersiner v. Union Pac. R.R., 754 F.Supp. 177, 178 (D.Kan.1990), aff'd, 947 F.2d 954 (10th Cir.1991).
"The law is clear that where there is but one indivisible injury caused by the joint or concurrent acts of two [or more] tortfeasors, each tortfeasor is jointly and severally liable for the entire amount of damages."[2]Lockard, 894 F.2d at 305 (citing Restatement (Second) of Torts § 433A (1965)). Indeed, "[w]here two or more causes combine to produce ... a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm." Restatement (Second) of Torts § 433A cmt. on subsection (2), at 440 (1965)[3]; see W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 52, at 345, 347 (5th ed. 1984). Further, "[i]t is not necessary that the misconduct of two or more tortfeasors be simultaneous. One defendant may create a situation upon which the other may act later to cause the harm." Restatement (Second) of Torts § 433A cmt. on subsection (2), at 440 (1965); see Ravo by Ravo v. Rogatnick, 70 N.Y.2d 305, 310, 520 N.Y.S.2d 533, 536, 514 N.E.2d 1104, 1106-07 (1987) (Tort-feasors who neither act in concert nor concurrently may nevertheless be considered jointly and severally liable in the instance of certain injuries which, because of their nature, are incapable of any reasonable or practicable division or allocation among multiple tort-feasors.); see, e.g., Keeton et al., supra, § 52, at 348 ("One [tortfeasor] may leave combustible material, and the other set it afire."). This, in fact, is the situation in the case at bar, as the jury found that the LIRR created a risk of harm to the plaintiff that came to fruition through the foreseeable misconduct of third persons.
In light of the foregoing principles, the LIRR's argument that Officer Mazyck did not suffer an indivisible injury is clearly without merit. Although the LIRR contends that damages attributable to the civil tort of assault are not recoverable against the LIRR, the injuries attributable to said intentional conduct cannot be distinguished, in quantifiable terms, from the injuries that may be traced to the LIRR's negligent conduct. Any attempt to parse that portion attributable solely to the civil tort of assault from the *1334 balance attributable to Officer Mazyck's battery at the hands of Gregory Staff would be arbitrary, and without any reasonable basis in the evidence. This determination inheres, in part, because the jury reasonably could have inferred from the evidence that the civil assaults of Richard Staff and Alan Scott, through their acts of rushing toward the plaintiff diminished the plaintiff's ability to defend himself against Gregory Staff, and prevented Officer Provenzano from coming to Officer Mazyck's aid. Thus, the jury reasonably could have inferred that, but for the civil assaults, the plaintiff would not have been injured, or would have been injured to a lesser extent. Otherwise stated, the intentional conduct of defendants Richard Staff and Alan Scott produced the very same injuries to the plaintiff as did the LIRR's negligence. Therefore, subject to the jurisdictional concerns that the Court subsequently will address, each of the parties would be jointly and severally liable to the plaintiff for the full amount of the compensatory damages award.
The Court also finds without merit the LIRR's argument that joint and several liability may not be imposed upon it because no rational jury could find that the LIRR acted jointly or in concert with the other defendants. With respect to this contention, the Court observes that the decisional authority cited by the LIRR contradicts its argument. See Ravo, 70 N.Y.2d at 310, 520 N.Y.S.2d at 536, 514 N.E.2d at 1106-07 ("[T]ort-feasors who neither act in concert nor concurrently may nevertheless be considered jointly and severally liable ... in the instance of certain injuries which, because of their nature, are incapable of any reasonable or practicable division or allocation among multiple tort-feasors."). "Rather, that aspect of the jury's determination of culpability merely defines the amount of contribution defendants may claim from each other, and does not impinge upon plaintiff's right to collect the entire judgment award from [any] defendant." Id. at 313, 520 N.Y.S.2d at 538, 514 N.E.2d at 1108-09. Accordingly, since the jury found that the intentional torts of the other defendants were reasonably foreseeable to the LIRR under the circumstances presented, the LIRR cannot avoid liability for the full amount of the plaintiff's injury, since said injury does not lend itself to any reasonable basis for apportionment.
Finally, the LIRR's argument that the Court is required to defer to the jury's apportionment of damages likewise is without merit. It is well established that "[t]he question whether the harm to the plaintiff is capable of apportionment among two or more causes is a question of law," that is to be decided by the court, and not the jury. Restatement (Second) of Torts § 434 cmt. d, at 448 (1965). Since the jury has sought to apportion an injury that as a matter of law cannot be divided, and the Court did not make any preliminary determination as to this matter, such apportionment is without legal effect, notwithstanding the plaintiff's failure to object, prior to the jury's deliberations, to the form of the interrogatory set forth in the supplemental verdict sheet. Cf. Mitchell v. Volkswagenwerk, AG, 669 F.2d 1199, 1209 (8th Cir.1982) (deeming the failure of the trial court to decide whether the damages could be reasonably apportioned to be plain error, even though the plaintiff did not request specific instructions relating to joint and several tortfeasors). Indeed, as earlier discussed, there was no evidence in the record from which the jury could delineate the aspects of the plaintiff's injuries that were caused by the respective acts of the defendants.
In sum, therefore, the Court concludes that the LIRR is liable to the plaintiff to the full extent of the compensatory damages award. Accordingly, the Court now turns to consider the liability of the pendent parties, and whether the amount of damages awarded by the jury is excessive as a matter of law.

II. Pendent-Party Jurisdiction under the FELA
Defendants Richard Staff and Alan Scott, each of whom has been found liable to the plaintiff for the common-law tort of assault, move for judgment as a matter of law, or in the alternative, for a new trial, on the issue of damages. For the reasons set forth in the preceding section, under traditional principles of joint and several liability, each of these defendants would be liable to the plaintiff *1335 for the full amount of his injury, as said injury is incapable of reasonable apportionment. With respect to these defendants, the element of causation is satisfied because the jury reasonably could have inferred from the evidence that their acts of rushing toward the plaintiff diminished the plaintiff's ability to defend himself against Gregory Staff, and prevented Officer Provenzano from coming to Officer Mazyck's aid. Thus, the jury reasonably could have inferred that, but for these defendants' acts, the plaintiff would not have been injured, or would have been injured to a lesser extent. Otherwise stated, the acts of these defendants set in motion a sequence of events that directly contributed to the plaintiff's injuries. Therefore, subject to the jurisdictional concerns that the Court now turns to address, each of these defendants would be jointly and severally liable to the plaintiff for the full amount of the compensatory damages award.
The foregoing discussion aside, the Court, upon review of the cases cited by the parties with respect to the issue of joint and several liability, has come across a substantial jurisdictional question that previously had not been brought to its attention. In Lockard v. Missouri Pacific Railroad, 894 F.2d 299 (8th Cir.), cert. denied, 498 U.S. 847, 111 S.Ct. 134, 135, 112 L.Ed.2d 102 (1990), the Eighth Circuit Court of Appeals held that the FELA does not authorize pendent-party jurisdiction. See id. at 301. In reaching this conclusion, the Eighth Circuit drew an analogy to the Supreme Court's analysis in Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), in which the Court construed the Federal Tort Claims Act not to authorize federal subject matter jurisdiction over pendent parties. See Lockard, 894 F.2d at 301 (citing Finley, 490 U.S. at 551-52, 554-56, 109 S.Ct. at 2008, 2010). The issue of pendent-party jurisdiction under the FELA does not appear to have been squarely addressed by the Second Circuit Court of Appeals with respect to cases, such as this one, that were filed prior to December 1, 1990  the date that the supplemental jurisdiction statute, 28 U.S.C. § 1367, went into effect. See, e.g., Hogan v. Consolidated Rail Corp., 961 F.2d 1021, 1026-27 (2d Cir. 1992) (noting that the Second Circuit Court of Appeals "has never squarely addressed the question of whether a plaintiff may invoke pendent party jurisdiction under [the] FELA," and not finally resolving this issue, as the court observed that the district court found diversity jurisdiction to exist between the plaintiff and the defendant in question). The Court observes, however, that at least one district court in this Circuit, subsequent to Finley, has concluded that pendent-party jurisdiction is unavailable in actions brought under the FELA prior to the effective date of 28 U.S.C. § 1367. See Lee v. Transportation Communications Union, 734 F.Supp. 578, 582 (E.D.N.Y.1990) (Spatt, J.). Since this is an issue that implicates the Court's subject matter jurisdiction, and therefore may not be waived by the parties, see, e.g., Lockard, 894 F.2d at 301 n. 1 (raising issue of pendent-party jurisdiction sua sponte on appeal), the Court now brings this matter to the parties' attention on its own motion. Accordingly, the Court directs the pendent parties, and the plaintiff, to brief this issue in accordance with the schedule set forth at the end of this opinion.

III. Motion for New Trial as to Damages
Finally, defendant LIRR moves for a new trial on the issue of damages unless the plaintiff consents to a substantial remittitur of the amount of damages awarded by the jury. Upon discounting to present value, net of expected inflation, that portion of the damages award attributable to future pain and suffering, the jury's aggregate compensatory damages award totals $679,450.57. See Doca v. Marina Mercante Nicaraguense, S.A., 634 F.2d 30, 40 (2d Cir.1980) (holding that inflation should be considered in estimating the present value of lost future wages, and suggesting 2% as an appropriate discount rate), cert. denied, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981); see also DeChico v. Metro-North Commuter R.R., 758 F.2d 856, 860-61 (2d Cir.1985) (applying Doca to require discount rate to be adjusted for future inflation in connection with award for future pain and suffering). This amount is comprised of the following elements:

*1336
 A. Loss of earnings $ 25,017.77
 B. Pain and suffering from the
 date of the injury (August
 30, 1985) through the date of
 verdict (June 30, 1994) 217,500.00
 C. Future pain and suffering 436,932.80
 ____________
 TOTAL $ 679,450.57
 ============

See Docket # 46 (Supplemental Verdict Form dated June 30, 1994); Stipulation dated May 15, 1995.[4] Thus, the jury's verdict included an aggregate award of $654,432.80 for past and future pain and suffering ($217,500.00 + $436,932.80), in addition to $25,017.77 for lost earnings, this last amount having been stipulated at trial.
Viewing the evidence pertaining to pain and suffering in the light most favorable to the plaintiff, see Batchkowsky v. Penn Central Co., 525 F.2d 1121, 1125 (2d Cir.1975), the testimony in this case reveals that, in addition to sustaining facial, lip, arm and back wounds that caused the plaintiff substantial pain immediately following the incident  and which now have fully healed with some scarring  the plaintiff sustained a torn medial meniscus, which caused him substantial discomfort over a prolonged period of time. Surgery was performed upon the plaintiff's medial meniscus in 1985, and some cartilage was removed from the knee during this operation. As a result of this surgical procedure, plaintiff was in considerable pain and required the use of crutches for several months. He was unable to resume work as a police officer until eight months after the incident, and thereafter was able only to perform desk work for the first three months following his return to employment. The plaintiff also underwent physical therapy until 1987. In addition, he has been diagnosed by Dr. Varriale, an orthopedic surgeon who is plaintiff's treating physician, as having sustained a partial tear to the anterior cruciate ligament, and as having post-traumatic arthritis. Tr. at 154-55, 157.
According to Dr. Varriale, the post-traumatic arthritis is expected to worsen over time, and potentially may require complete knee-replacement surgery. Tr. at 156. Further, as a result of his injuries, the muscle girt of plaintiff's right thigh has atrophied by one and one-quarter inches. Tr. at 154-55.
Plaintiff continues to feel some discomfort in his knee to this day, and experiences stiffness when he squats. In addition, his knee is sensitive to changes in temperature, and sometimes will hurt, or become stiff, after exercising. Tr. at 510-12.
In some respects, however, the plaintiff has resumed normal recreational activities. Thus, for example, beginning approximately one and one-half years prior to trial (and therefore almost seven and one-half years after the incident), the plaintiff resumed playing half-court basketball on a weekly basis. The plaintiff testified that his knee usually feels sore the day after he plays. Tr. at 510, 551-52.
While the Court regards the jury's awards for lost earnings and past pain and suffering to be reasonable, the Court is of the opinion that the jury's award of $436,932.80 in damages for future pain and suffering is extremely high, in view of the testimony concerning this matter that was provided by the plaintiff, and by Dr. Varriale, the plaintiff's treating physician.[5] A verdict is so high as to be "excessive," however, only if it surpasses "an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable [persons] may differ, but a question of law." Dagnello v. Long Island Rail Road, 289 F.2d 797, 806 (2d Cir.1961). The upper limit is surpassed when the verdict "shocks the judicial conscience," Nairn v. National R.R. Passenger Corp., 837 F.2d 565, 568 (2d Cir.1988), and therefore exceeds what a reasonable jury *1337 could have returned for the plaintiff if it followed the Court's instructions. See Scala v. Moore McCormack Lines, 985 F.2d 680, 683 (2d Cir.1993); Wynne v. Consolidated Rail Corp., No. 87 Civ. 8219 (RPP), 1990 WL 1218, at *3 (S.D.N.Y. Jan. 2, 1990).
In passing upon a motion challenging a jury's verdict as excessive, "the trial judge is not called upon to say whether the amount is higher than he [or she] personally would have awarded." Dagnello, 289 F.2d at 806. Further, if a trial judge finds an award to be excessive as a matter of law, the court may only reduce the verdict to the maximum amount that the law will allow. See Schottka v. American Export Isbrandtsen Lines, 311 F.Supp. 77, 80 (S.D.N.Y.1969).
A review of the facts of this case relative to similar cases is useful in determining whether the jury's award of damages for future pain and suffering is excessive as a matter of law. See Nairn, 837 F.2d at 568. Needless to say, any comparison with damages awards in other cases must take into account the increase in the cost of living between the date of the case being compared, and the date of the jury's verdict in the instant case. Further, the Court must be mindful "that any given judgment depends on a unique set of facts and circumstances." Id.
The Second Circuit Court of Appeals in Nairn, and several other circuit court opinions, cited with approval in Nairn, have reviewed fact patterns much worse than that in this case and have held pain and suffering awards in the range of this case's award to be excessive.[6] The Nairn court cites with approval reductions of pain and suffering verdicts by remittitur from $575,000 to $235,000, see id. (citing Gumbs v. Pueblo Int'l, Inc., 823 F.2d 768 (3d Cir.1987) (pain and suffering from inability to engage in sexual relations, recreational activities or games with children, from break-up of marriage, and from trouble with conducting household chores)), from $317,000 to $100,000, see id. (citing Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030 (3d Cir.1987) (pain and suffering from inability to sit for long periods, to dance, or to perform former job)), and from $485,000 to $285,000. See id. (citing Harper v. Zapata Off-Shore Co., 741 F.2d 87 (5th Cir.1984) (pain and suffering from two operations, trouble sleeping, and inability to return to work ever again)). In Nairn itself, the Second Circuit Court of Appeals found an award of "at least $400,000" for past and future pain and suffering to be excessive where a back injury, causing a 15% permanent functional impairment, prevented the plaintiff from enjoying a variety of athletic activities. The plaintiff, in Nairn, who had a life-expectancy of 37.7 years, also could no longer perform household chores such as chopping wood, gardening, and shoveling snow, and had become generally "depressed" as a result of these limitations. Id. at 566-68.
A number of decisions of the New York State courts also sheds light on this inquiry. Cf. Scala v. Moore McCormack Lines, 985 F.2d 680, 683 n. 7, 684 (2d Cir.1993) (surveying awards in state-court cases in analyzing whether award in federal-question case was excessive, although noting different standards of review under federal and state law). In Castellano v. City of New York, 183 A.D.2d 800, 584 N.Y.S.2d 114 (2d Dep't), leave to appeal denied and dismissed, 80 N.Y.2d 1021, 592 N.Y.S.2d 667, 607 N.E.2d 814 (1992), the plaintiff slipped on an icy sidewalk causing an injury to his knee which required two arthroscopic surgeries and rendered him unable to perform his job as a police officer. His treating physician opined that the plaintiff would require surgery in the future, in addition to a possible removal of the kneecap, and that he would suffer arthritic changes in the knee as well. The court found the jury's award of $500,000 for pain and suffering to be excessive and ordered remittitur for damages over $200,000. See id. 584 N.Y.S.2d at 115-16. In Tejada v. City of New York, 129 A.D.2d 697, 514 N.Y.S.2d 459 (2d Dep't 1987), the plaintiff sustained an injury which required several surgical procedures and resulted in chronic pain in her back and knee. The court found *1338 an award of $1,426,431 to be "clearly excessive," and ordered it reduced to $700,000, inclusive of "economic loss she will likely incur." Id. 514 N.Y.S.2d at 460. In Gonzalez v. Manhattan and Bronx Surface Transit Operating Authority, 160 A.D.2d 420, 554 N.Y.S.2d 116 (1st Dep't 1990), the plaintiff suffered a torn meniscus and cartilage damage when, in an automobile accident, both knees struck the dashboard of her vehicle. The court found an award of $1,200,000 for pain and suffering to be excessive, and ordered it reduced to $600,000. See id. 554 N.Y.S.2d at 117. In Cranston v. Oxford Resources Corp., 173 A.D.2d 757, 571 N.Y.S.2d 733 (2d Dep't), leave to appeal denied, 78 N.Y.2d 860, 576 N.Y.S.2d 219, 582 N.E.2d 602 (1991), the plaintiff suffered a fracture of the tibia and fibula resulting in a permanent partial disability. In addition, the plaintiff underwent four operations on her right leg and was required to undergo a fifth in the future to have surgically-implanted metal plates and pins removed from her calf once the bone mended. The court sustained as reasonable awards of $500,000 for past pain and suffering, and $350,000 for future pain and suffering. See id. 571 N.Y.S.2d at 734-35.
In Burton v. New York City Housing Authority, 191 A.D.2d 669, 595 N.Y.S.2d 807 (2d Dep't 1993), the plaintiff, who was 26 years old at the time, sustained a knee injury of approximately the same degree of severity  if not greater severity  as that suffered by the plaintiff in the case at bar. The plaintiff, in Burton, suffered a ruptured meniscus, along with related damage to ligaments, tendons and soft tissue. The plaintiff was required to undergo reconstructive surgery which involved the removal of the ruptured meniscus. A subsequent arthroscopic examination revealed severe cartilage deterioration, which in the opinion of the plaintiff's medical expert indicated the probable need for a knee-replacement operation in the future. This expert also concluded that the plaintiff's knee had developed a severe arthritic condition and that the injury was permanent in nature. The court found the jury's award of $525,000 for pain and suffering to be excessive, and ordered it reduced to $262,500. See id. 595 N.Y.S.2d at 808-09.
While the Court is not without sympathy for the plaintiff for the injuries that he has sustained, the jury's award of $436,932.80 for future pain and suffering, albeit over a remaining life expectancy of 36 years, is grossly in excess of that amount which the evidence reasonably can support. The plaintiff already has been awarded $217,500.00 by the jury for the pain and suffering that he incurred from the date of the injury (August 30, 1985) through the date of the jury's verdict (June 30, 1994). Thus, the jury's award for past pain and suffering compensates the plaintiff for nearly nine-years' worth of affliction, including the first year following the incident, in which he was operated upon, required the use of crutches, underwent physical therapy, experienced constant discomfort, and at times felt substantial pain as a result of severe flesh wounds to his lip and other parts of his body. The Court is mindful of Dr. Varriale's diagnosis of post-traumatic arthritis that may worsen over time, and his expert testimony that the plaintiff may require knee-reconstruction surgery at some unspecified point in the future. The Court further recognizes that the plaintiff's remaining life expectancy, as determined by the jury, exceeds by more than four times the period of time that elapsed between the date of the incident and the date of the verdict. Nevertheless, the plaintiff's resumption, albeit not without discomfort and soreness in his knee, of some of his past recreational activities  including playing half-court basketball on a weekly basis  counsels strongly against a maximum award for future pain and suffering in excess of 60% of the amount awarded by the jury for his pain and suffering through the date of the verdict. As 60% of $217,500.00 equals $130,500.00, and said amount is $306,432.80 less than the corresponding amount of $436,932.80 awarded by the jury, plaintiff is ordered to remit $306,432.80 or face a new trial on the issue of his future pain and suffering. See Scala, 985 F.2d at 684 (Because the Seventh Amendment bars a court from unilaterally reducing a jury's award, "[t]he plaintiff must be given the option of a new trial on the issue of the damages found to be excessive."). Assuming that the plaintiff agrees to remit this amount, the total compensatory damages award would be reduced *1339 to $373,017.77,[7] of which amount $348,000.00 is attributable to past and future pain and suffering.

CONCLUSION
In accordance with the foregoing, the Court enters the following orders in this action:
(1) Defendant LIRR's motion for an order absolving it from joint and several liability for the full amount of the compensatory damages award is DENIED. Rather, the Court hereby rules that the LIRR is jointly and severally liable to the plaintiff for the full amount of the compensatory damages award.
(2) The individual-named defendants are directed to serve a motion to dismiss the complaint, within 20 days of the date that this Memorandum and Order is docketed, addressing whether this Court has subject matter jurisdiction over said defendants as pendent parties in a FELA action brought prior to December 1, 1990, the effective date of 28 U.S.C. § 1367. This motion shall follow the Court's individual rules, and shall be filed with the Court as a single comprehensive package, that includes the plaintiff's opposition brief and any reply brief thereto, within 30 days of the date that this Memorandum and Order is docketed.
(3) Defendant LIRR's motion for a remittitur is GRANTED. Plaintiff is hereby ordered to remit $306,432.80 or face a new trial on the issue of his future pain and suffering. Plaintiff has 30 days from the date that this Memorandum and Order is docketed to consent to the remittitur, or alternatively, to exercise his right to a new trial. This time frame for consent to remittitur, as well as the finality of this aspect of the Court's ruling, shall be unaffected by any subsequent determination concerning the Court's subject matter jurisdiction over pendent parties under the FELA.
SO ORDERED.
NOTES
[1] Section 1 of the FELA provides, in pertinent part, that every common carrier by railroad shall be liable in damages to its employees who are injured "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.
[2] For purposes of this rule, "it is immaterial whether all or any of [the tortfeasors] are joined as defendants in the particular action." Restatement (Second) of Torts § 433A cmt. a, at 434 (1965). Thus, the Court's concern regarding the absence of pendent-party jurisdiction under the FELA, as discussed infra, has no implication upon the LIRR's liability for the full amount of the plaintiff's injury.
[3] Entitled "Apportionment of Harm to Causes," Restatement (Second) of Torts § 433A provides:

(1) Damages for harm are to be apportioned among two or more causes where
(a) there are distinct harms, or
(b) there is a reasonable basis for determining the contribution of each cause to a single harm.
(2) Damages for any other harm cannot be apportioned among two or more causes.
Restatement (Second) of Torts § 433A, at 434 (1965).
[4] In addition, the jury awarded the plaintiff $200,000.00 in punitive damages as against defendant Gregory Staff. See Docket # 47, at 6 (Verdict Form dated June 27, 1994). This aspect of the award, needless to say, is subject to the Court's subsequent determination concerning the availability of pendent-party jurisdiction. See supra.
[5] As the Court undertakes its review of the jury's award for future pain and suffering viewing the evidence in the light most favorable to the plaintiff, the Court does not accord substantial probative weight to the testimony of the LIRR's consultative physician, as this physician last examined the plaintiff approximately three years prior to trial.
[6] The Court notes that most of the cases cited do not separately state the amount of damages attributable to the past and future elements of the pain and suffering award.
[7] The Court notes that the plaintiff has not made any application concerning the applicability of prejudgment interest to that portion of the damages award attributable to his loss of past earnings. Accordingly, the Court expresses no view concerning this matter at this time, and directs the parties to resolve this issue by stipulation in submitting their proposed judgment to the Court.